IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BOBBIE F. WALLS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24CV1074 |
| | ) | |
| CITY OF GREENSBORO, DET. J.C. | ) | |
| PAYNE, DET. M.P. O'HAL, DET. | ) | |
| A.J. SMITH, DET. G.H. WILDE, | ) | |
| DET. K.A. DENNY, DET. R.L. | ) | |
| ARMSTRONG, OFC. WALKER, OFC. | ) | |
| TYLER, and OFC. HOOKER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Police officers with the City of Greensboro arrested, detained, and charged Bobbie F. Walls, Jr. with crimes related to drug distribution, a drive-by shooting, and a separate discharge of a firearm. Walls contends officers lacked probable cause and knowingly made false statements and material omissions to the Magistrates to obtain warrants and charges. He has sued the defendants for these alleged acts and claims violations of his Fourth, Eighth, and Fourteenth Amendments rights pursuant to 42 U.S.C. § 1983, and false arrest, false imprisonment, obstruction of justice, and defamation per se in violation of North Carolina law. *See generally* Compl., Docket Entry 1.

The City of Greensboro ("the City") has moved to dismiss all claims against it, the official capacity claims against the individual defendants, and the punitive damages demand. *See* Def. City of Greensboro's Mot. to Dismiss, Docket Entry 15; Def. City of Greensboro's Mem. of Law in Support of Mot. to Dismiss ("Mem. in Supp."), Docket Entry 16.

Because Walls has not sufficiently pled *Monell* liability against the City, the federal claims against the City should be dismissed. Likewise, Walls has not alleged the City waived immunity from suit for state torts. Further, because adequate state remedies can redress the alleged injuries, there is no direct state constitutional claim. Thus, the state

law claims against the City should be dismissed. Were any claim to survive against the City, Walls could not be awarded punitive damages, and, therefore, his request for them should be dismissed. And, finally, because the official capacity claims against the individual defendants are duplicative of the claims against the City, they, too, should be dismissed.

In sum, the Court should grant the City's motion.

## I. FACTS

All well-pled facts are accepted as true and considered in the light most favorable to the plaintiff. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009) (citation modified).

On the afternoon of September 27, 2023, in Greensboro, a person fired shots out of a black Cadillac SUV speeding east on West Wendover Avenue near Norwalk Street. A round struck a nearby car and hit the driver in the left leg. Compl. at 35.[1] According to the police report, a witness told officers that he was "'one hundred percent sure it was a black Cadillac SUV'" with tinted windows that made it difficult to see the driver. *Id.* at 36. Walls alleges that same witness told Officer Hooker that he "'saw a black Cadillac Escalade.'" *Id.* ¶ 9. When Officer Hooker reviewed

security footage from Greensboro Nissan, he saw "'a black Cadillac Escalade'" swerve into the left lane to avoid crashing into the victim's car. *Id.* ¶ 10. Walls does not drive a black Cadillac Escalade. Instead, he drives a black Cadillac SRX, which is smaller than an Escalade. *Id.* ¶ 14.

That same afternoon, the driver of a black Cadillac SUV discharged a firearm out of the car while heading east on Landmark Center Boulevard. *Id.* at 33. Other detectives and officers at this scene told Hooker that "it appeared to them that the same 'Black Cadillac Escalade' was involved in [both shootings]." *Id.* ¶ 11. A witness to this shooting described the driver as "'a black male in his late twenties with long dreads possibly shoulder length.'" *Id.* These features do not describe Walls. Instead, Walls is a black male in his early forties who is bald with a full beard with gray patches. *Id.* ¶ 13.

Two days later, on September 29, Detectives Wilde and O'Hal stopped Walls' car for fictitious tags and no financial responsibility on the car. *Id.* ¶¶ 15, 31. Officers also told Walls that his car was involved in a shooting, and they accused him of living at 1012 Fir Place in Greensboro. *Id.* ¶¶ 16, 17. Walls did not live at 1012 Fir Place. Instead, at all relevant times, his residence was 502 Woodlake Drive. *Id.* ¶¶ 23, 34.b. The officers searched Walls and the car and found no

---

[1] Walls attached copies of two police reports to his Complaint. Citations to information in those reports are the page

numbers that CM/ECF assigned to the document. Elsewhere, Walls organized his Complaint with paragraphs.

2

evidence of any illegal activity — no firearms, bullets, bullet holes, drugs, or drug paraphernalia. *Id*. ¶¶ 31, 34.e.

Detectives Wilde and O'Hal transported Walls to the Swing Road station and locked him in an interview room where they held him for approximately five hours. *Id*. ¶¶ 18, 20. Officers never cited him for traffic violations. Instead, they questioned him about his location on September 27 and asked him about the location of a firearm. *Id*. ¶ 20. A detective told Walls, "We know you sell drugs out your Brother's house" because "a C.I. told us.'" *Id*. ¶ 19. Walls denied selling drugs and told the detectives that he did not live at that house. *Id*. The detectives responded by telling him that "they saw [him] leaving 1012 Fir Place" and asked him, "Will any drugs be found there?" *Id*. ¶ 21.

That same day, Detective J.C. Payne applied for a search warrant for 1012 Fir Place and swore to the Magistrate that the following information was verified: the suspect car was a 2018-2019 model of a black Cadillac SRX, the driver discharged a firearm, a confidential informant named Walls as selling and storing drugs at 1012 Fir Place, and 1012 Fir Place was Walls' residence. *Id*. ¶ 24.

Payne did not inform the Magistrate of the actual suspect's description, that the suspect car was a Cadillac Escalade, or that Walls' residence was

502 Woodlake Drive. *Id*. ¶ 23; *see also id*. ¶¶ 24, 33, 34.b.

Law enforcement executed the residential search warrant at 1012 Fir Place and found firearms and suspected drugs. They charged Walls with possessing them. *Id*. ¶ 22.

On October 13, K.A. Denny applied for and received an arrest warrant for Walls based on the offenses of September 27. *Id*. ¶¶ 26, 27. Denny swore to the Magistrate the name of a witness to the offenses who "'identif[ied] Mr. Walls as the offender.'" *Id*. ¶ 27. But Denny knew that statement was false because the witness "'was never anywhere around 6006 Landmark Center Blvd. to Witness ANYONE discharge a Firearm" and never told law enforcement he was there. *Id*. ¶¶ 28, 32, 34.e. The only witness to the shooting on Landmark Center Boulevard provided a description of the suspect that did not describe Walls. *Id*. ¶ 32.

Walls also alleges that Armstrong, Walker, Hooker, and Tyler altered their police reports to reflect a dispatch time that aligned with the time his "alleged vehicle is seen on Flock," the city's license-plate reader system. *Id*. ¶ 34.a. But the detectives did not use Flock "to establish [him] as the driver" of the suspect SUV. *Id*. ¶ 34.b. In addition, Smith stated in his report that he researched Walls "and determined he had a [sic] address of 1012 Fir Place" even though Walls' address "at all relevant

3

times" was 502 Woodlake Drive. *Id.* ¶ 34.e.

Law enforcement charged Walls with possession of a firearm by a felon, going armed to the terror of the people, injury to personal property, discharging a weapon into occupied property inflicting serious bodily injury, assault with a dangerous weapon inflicting serious injury, and discharging a firearm in the city. *Id.* ¶ 26.

Denny and Payne also published false information to the News & Record newspaper. *Id.* ¶ 35.

The detectives' and officers' actions "deprive[d] Mr. Walls of his liberty for a year, and continued detention." *Id.* ¶ 34.e.

In short, Walls alleges that members of the Greensboro Police Department knowingly presented false information and omitted material information under oath when applying for warrants. These false statements and omissions led to Walls' arrest and detention for crimes related to the incidents on September 27, 2029. And Walls seeks to hold the City vicariously liable for these unlawful actions.

## II.   STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions "must be supported by factual allegations" that amount to more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (citing *Twombly*, 550 U.S. at 555). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555-56.

Although a plaintiff is not required to prove his case in the complaint, *see, e.g.*, *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012); *Scott v. City of Durham*, No. 1:20-CV-558, 2021 WL 3856168, at *2 (M.D.N.C. Aug. 27, 2021), the complaint's allegations should "allow 'the court to draw a reasonable inference that the defendant is liable for the misconduct alleged,'" *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).

On a motion to dismiss, courts view the allegations in the complaint as true, drawing all inferences in the plaintiff's favor. *See Twombly*, 550 at 555–56 (2007); *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). But the court does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd.*,

591 F.3d at 255.   A *pro se* plaintiff's complaint must be construed liberally in his favor. *See Nichols v. Bumgarner*, 173 F.4th 511, 517–18, 520 (4th Cir. 2026); *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015).

However, even under this liberal standard, because Walls has not adequately pled any official policy by the City, his complaint fails to state any claim against the City.

### III.   ANALYSIS

a. The § 1983 claims against the City fail as a matter of law.

Title 42, United States Code, Section 1983 "is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States" by persons acting under color of state law. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  A Section 1983 claimant must show that a person acting under color of state law violated a Constitutional or other federal legal right. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Walls alleges violations of his rights under the Fourth, Eighth, and Fourteenth Amendments. Specifically, he contends that the City is liable for his unlawful arrest and detention in violation of the Fourth and Fourteenth Amendments, Compl. ¶ 38; false statements, material omissions, and fabrication of evidence depriving him of liberty in

violation of the Fourteenth Amendment, *id.* ¶ 40; publishing or disseminating stigmatizing or damaging information and causing the deprivation of his liberty (stigma-plus) in violation of the Fourteenth Amendment, *id.* ¶ 42; failing to intervene to prevent the constitutional violations in violation of the Eighth Amendment, *id.* ¶ 44; and approving or ratifying the officers' violations of Walls' constitutional rights showing deliberate indifference towards citizens' safety in violation of the Eighth Amendment, *id.* ¶ 45.

"For purposes of § 1983, a municipality is considered a 'person' and thus is subject to suit." *Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)).  However, a city cannot be *vicariously* liable for the acts of its employees. *Id.* at 553-54.  "Rather, 'it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'" *Id.* at 554 (quoting *Monell*, 436 U.S. at 694).

In other words, "municipal liability under Section 1983 attaches only to 'action [taken] pursuant to official municipal policy of some nature.'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477 (1986)).  A single decision may create an official policy "so long as that governmental unit possessed 'final

authority to create official policy.'" *Id.* (quoting *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999)).

"'The question of who possesses final policymaking authority is one of state law.'" *Id.* at 555 (quoting *Riddick v. Sch. Bd.*, 238 F.3d 518, 523 (4th Cir. 2000)). Courts "'must look to the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law.'" *Id.* (quoting *Riddick*, 238 F.3d at 523). A "municipality may delegate its final policymaking authority to other officials or governing bodies." *Id.*

Here, the City argues that Walls' *Monell* allegations are conclusory and lack factual support. Mem. in Supp. at 5. Walls' response does not address this challenge. *See generally* Resp. to Def.'s Dismissal of Complaint ("Resp."), Docket Entry 20.

Indeed, the Complaint lacks factual support for its conclusory *Monell* allegations. The Court need not determine who has final policymaking authority for arrests and detention here because Walls alleges nothing more than the elements of the claim. *See Smith v. City of Greensboro*, No. 1:19CV386, 2020 WL 1452114, at *10 (M.D.N.C. Mar. 25, 2020) ("Ultimately, there is no need to parse Plaintiffs' inconsistent statements; their 'formulaic recitation' of terms like 'decisionmaker' and 'policy' do not camouflage the fact that no specific, affirmative policy decisions –

by Chief Scott or any other named official – are alleged anywhere in the complaint.")

Walls' "Monell Claim" consists entirely of the following allegations:

> Defendant the City is liable because the Constitutional injuries alleged in Counts A, B, C and D, was [sic] committed by city police officer(s), were approved or ratified by City officials with final policymaking authority for the City, and were the results of city . . . policies adopted by those City officials.
>
> . . .
>
> [The City] approv[ed] or ratifi[ed] . . . the Constitutional violation(s) of its police officer(s) and fail[ed] to create policies to prevent the 'go-along-to-get-along' culture practiced by [the officers].

Compl. ¶¶ 37, 45. Elsewhere in the Complaint, he alleges in a similar conclusory fashion that the "City is vicariously liable for . . . false arrest, false imprisonment . . . by its officer(s) in their official capacities" and the "City is vicariously liable for the constitutional violations of their officer(s) acting in their official capacities" Compl. ¶¶ 32, 35.

These allegations lack any specific policy decision affecting Walls'

6

constitutional rights or any person who had final policymaking authority with respect to that policy.

Walls has not sufficiently pled *Monell* liability against the City. Therefore, the Court should dismiss the § 1983 claims against the City.

   b. The state tort claims against the City fail as a matter of law.

North Carolina "has recognized the rule of governmental immunity for over a century." *Estate of Williams ex rel. Overton v. Pasquotank Cnty. Parks & Rec. Dep't*, 732 S.E.2d 137, 140 (N.C. 2012) (citing cases). The doctrine of governmental immunity provides that a municipality "'is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity.'" *Id.* (quoting *Evans ex rel. Horton v. Housing Auth.*, 602 S.E.2d 668, 670 (N.C. 2004)); *see also id.* at 141 (noting that this immunity does not apply to the performance of proprietary functions). A governmental function "is an activity that is 'discretionary, political, legislative, or public in nature and performed for the public good in behalf of the State rather than for itself.'" *Id.* (quoting *Britt v. City of Wilmington*, 73 S.E.2d 289, 293 (N.C. 1952)). "A police officer in the performance of his duties is engaged in a governmental function." *Mullins by Mullins v. Friend*, 449 S.E.2d 227, 230 (N.C. Ct. App. 1994).

Nevertheless, "'a city can waive its immunity by purchasing liability insurance.'" *Flomeh-Mawutor v. City of Winston-Salem*, 906 S.E.2d 1, 8 (N.C. Ct. App. 2024) (quoting *Reid v. Town of Madison*, 527 S.E.2d 87, 89 (N.C. Ct. App. 2000)).

Here, Walls alleges the City is vicariously liable for false arrest, false imprisonment, obstruction of justice, and defamation per se. *See generally* Compl. But the City argues that he failed to allege that the City waived its immunity from suit for these torts. Mem. in Supp. at 7-8. As before, Walls' response does not address this challenge. *See generally* Resp. in Opp'n. The City is correct; Walls must allege the City waived its immunity, and his failure to do so dooms the tort claims.

"To overcome a defense of governmental immunity, '[t]he complaint must specifically allege a waiver of governmental immunity.'" *Polk v. Clark*, No. 1:24CV744, 2026 WL 699649, at *8 (M.D.N.C. Mar. 12, 2026) (quoting *Phillips v. Gray*, 592 S.E.2d 229, 232 (N.C. Ct. App. 2004) and granting the defendants' motion to dismiss the tort claims against them in their official capacities because the plaintiff failed to allege waiver of governmental immunity); *see also, e.g.*, *Stevens v. Town of Snow Hill*, No. 4:19-CV-156-D, 2021 WL 2345353, at *13 (E.D.N.C. June 8, 2021) (stating the same and granting the town's and county's motions to dismiss because the plaintiff did not allege a waiver of governmental

Case 1:24-cv-01074-CCE-JGM   Document 24   Filed 07/07/26   Page 7 of 11

immunity); *Molamphy v. Town of Southern Pines*, No. 1:02CV720, 2004 WL 419789, at *11 (M.D.N.C. Mar. 3, 2004) ("A plaintiff must allege that this waiver occurred in order to take advantage of the waiver and state a proper claim for relief."); *Phillips*, 592 S.E.2d at 232 ("The complaint must specifically allege a waiver of governmental immunity to overcome a defense of sovereign immunity. Absent such an allegation, the complaint fails to state a cause of action.") (internal citation omitted).

Walls' allegations against the members of the Greensboro Police Department involve actions they took in the performance of their duties: they arrested and detained him without probable cause, they made false statements and material omissions to the Magistrate to obtain warrants and charges against him, and they made false statements about Walls' September 27, 2023 criminal actions to the newspaper. The officers and detectives were, therefore, performing governmental functions at all relevant times. The City is thus immune from suit for their tortious actions, and Walls failed to make the requisite allegations that the City waived that immunity.

Because the City is immune from the state torts of the members of the Greensboro Police Department, and Walls failed to allege a waiver of that immunity, he has failed to state tort claims against the City. The Court should grant the City's motion to dismiss the state tort claims.

c. The North Carolina constitutional violations fail as a matter of law.

"'[T]he North Carolina Supreme Court has held that 'in the absence of an adequate state remedy,' one whose state constitutional rights have been abridged has a direct claim under the North Carolina Constitution; otherwise no direct constitutional claim is recognized." *Edwards v. City of Concord*, 827 F. Supp. 2d 517, 520 (M.D.N.C. 2011) (quoting *Craig v. New Hanover Cnty. Bd. of Educ.*, 678 S.E.2d 351, 356-57 (N.C. 2009) (internal citation omitted).

Walls alleges that the City is vicariously liable for the officers' false statements and material omissions to the Magistrate that led to his arrest and detention in violation of the North Carolina Constitution. The City argues that Walls has adequate remedies to redress these injuries and, in fact, is seeking those remedies here with claims of false arrest, false imprisonment, defamation, obstruction of justice, and malicious prosecution. Mem. in Supp. at 8-9. Walls' response does not address this challenge. *See generally* Resp.

North Carolina "courts have emphasized that '[a]n adequate state remedy exists if, assuming the plaintiff's claim is successful, the remedy would compensate the plaintiff for the *same injury* alleged in the direct constitutional claim.'" *Edwards*, 827 F. Supp. 2d at 523

8

(quoting *Estate of Fennell ex rel. Fennell v. Stephenson*, 528 S.E.2d 911, 915-16 (N.C. Ct. App. 2000), *rev'd in part on other grounds*, 554 S.E.2d 629 (N.C. 2000)). Notably, a "'remedy' is not synonymous with an actual recovery. Rather, it is the 'possibility of relief under the circumstances.'" *Id.* at 524 (quoting *Craig*, 678 S.E.2d at 355).

The *Edwards* court dismissed the direct constitutional claim because the tort claims of false arrest and assault and battery protect the same constitutional rights to be free from improper restraint and excessive force that the plaintiff alleged the defendants violated. *Id.* at 524. The *Fennell* court affirmed dismissal of the direct constitutional claim where claims of false imprisonment, trespass to chattel, and wrongful death were adequate remedies for the same constitutional injuries of unlawful search, unlawful seizure and detention, excessive force, and the killing of Fennell. 528 S.E.2d at 916.

The wrinkle here is that the undersigned has recommended dismissing the state tort claims against the City. Were the District Court to adopt that recommendation, Walls will have no "opportunity to enter the courthouse doors and present his [tort] claim[s]" against *the City*. *See Craig*, 678 S.E.2d at 355.

However, Walls still has an adequate remedy at law to address those same injuries — his claims against the individual defendants in their

individual capacities, just as the plaintiffs did in, for example:

- *Edwards*, 827 F. Supp. 2d at 521-22 (granting the City's motion to dismiss the state constitutional claims because the plaintiff had an adequate remedy with his claims against the officer in his individual capacity, even assuming that immunity would bar the tort claims against the City and the officer in his official capacity);

- *Hogan v. Cherokee Cnty.*, 519 F. Supp. 3d 263, 290 (W.D.N.C. 2021) (finding that "the inability to pursue certain claims that are barred by immunity does not deprive the Plaintiffs of an adequate remedy" where the plaintiffs alleged state law claims against defendants in their individual capacities);

- *J.W. v. Johnston Cnty. Bd. of Educ.*, No. 5:11-CV-707-D, 2012 WL 4425439, at *17 (E.D.N.C. Sept. 24, 2012) (dismissing constitutional claim against the board because "even though governmental immunity bars Newsome's state-law claims against the Board from being adequate remedies, Newsome's state-law claims against Moore and Croom in their individual capacities are adequate remedies"); and

9

- *Glenn-Robinson v. Acker*, 538 S.E.2d 601, 619 (N.C. Ct. App. 2000) (affirming the grant of summary judgment on state constitutional claims where the plaintiff conceded that "only if this Court should find plaintiff 'has no common law cause of action against . . . Acker in his individual capacity' should her [constitutional claims] stand").

Because Walls has an adequate remedy under state law to redress the injuries supporting his constitutional claim, the Court should dismiss Walls' constitutional claim against the City.

d. Were there a viable claim against the City, Walls could not recover punitive damages.

As the City argues, had Walls sufficiently stated a claim against the City, he could not recover punitive damages from the City. *See* Mem. in Supp. at 7. "[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also Scott v. City of Durham*, No. 1:20-CV-558, 2021 WL 3856168, at * 3 (M.D.N.C. Aug. 27, 2021) (citing *City of Newport* and dismissing the claims against the City for punitive damages); *Sutton v. Rockingham Cnty.*, No. 1:21CV95, 2022 WL 960460, at *7 (M.D.N.C. Mar. 30, 2022) (citing *City of Newport* and dismissing the claim

against the county for punitive damages).

Similarly, North Carolina law prohibits the award of punitive damages against a municipality. *See Doe v. Nash Cnty. Bd. of Educ.*, No. 5:24-CV-259-D, 2025 WL 820671, at *12 (E.D.N.C. Mar. 13, 2025) (citing cases finding the same).

Therefore, were any claim against the City to survive, the Court should dismiss Walls' punitive damages request for relief.

e. The official capacity claims against the individual defendants are duplicative of those against the City.

The City moves to dismiss the official capacity claims against the individual defendants.[2] As courts have long recognized, official capacity claims against law enforcement officers "generally represent only another way of pleading an action against an entity of which an officer is an agent." *See Monell*, 436 U.S. at 690 n.55. Therefore, the court should dismiss them. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (affirming the district court's dismissal of the § 1983 claim against the individual defendant in his official capacity as duplicative of the claim against the Board of Education) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)); *see also*

---

[2] "[B]ecause an official capacity claim is a claim against the municipality, its dismissal should be sought by the

municipality." *Howard v. City of Durham*, No. 1:17cv477, 2018 WL 1621823, at *9 (Mar. 31, 2018).

*Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 463 (M.D.N.C. 2016) (dismissing the official capacity § 1983 claim against the individual defendant).

## IV.    CONCLUSION

**IT IS HEREBY RECOMMENDED** that the Court **GRANT** the City of Greensboro's Motion to Dismiss and dismiss all claims against the City and the officer defendants in their official capacities with prejudice.

JoAnna Gibson McFadden
United States Magistrate Judge

July 7, 2026

11